**WATER ENERGIZERS LTD., Plaintiff,**

v.

**WATER ENERGIZERS, INC., Estate of Robert E. Harris, Ronald D. Harris, Lahna Harris, Rhonda Harris Frazier, Walter Edwards, and Robert E. Harris, Jr., Defendants.**

No. 91 Civ. 1234(PNL).

United States District Court,
S.D. New York.

April 2, 1992.

Pryor, Cashman, Sherman & Flynn (Donald S. Zakarin, Perry Amsellem, of counsel), New York City, for plaintiff.

Philip Furgang, New York City, Myer S. Tulkoss, Suffern, N.Y., for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Defendants move to dismiss for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2), or to transfer pursuant to 28 U.S.C. § 1404(a) or dismiss pursuant to 28 U.S.C. § 1406(a) or the doctrine of forum *non conveniens.*

### BACKGROUND

This is an action for breach of a franchise agreement, fraudulent inducement, and violations of various state statutes relating to franchise agreements. The following facts are uncontested or appear from the submissions of plaintiff.

Defendant Water Energizers, Inc. ("WEI") is a manufacturer and franchisor of a commercial water treatment system that is marketed as the "Water Energizer." WEI is owned and managed by members of the Robert E. Harris family. Plaintiff Water Energizers Ltd. ("WEL") is a franchisee of WEI for the marketing of the Water Energizer.

A Water Energizer consists of a brass tube filled with a compound of finely ground minerals, cellulose and a petroleum solvent. WEI's promotional literature claims that when the Water Energizer is properly installed in a boiler, heat exchanger, cooling tower, or other "water related equipment," it prevents scaling, corrosion and rust, removes already existing scale. WEI markets and leases the Water Energizer to the ultimate customers through its franchisees. WEI uses a standard franchise agreement which provides that a franchisee will pay WEI a set royalty payment for each Water Energizer the franchisee leases to a customer. Franchisees have the right to set lease prices to customers.

Robert E. Harris ("Robert Sr."), was the founder, CEO and president of WEI until his death in 1989. The complaint names his estate as a defendant. Three of Robert Sr.'s children, defendants Rhonda Harris Frazier ("Rhonda"), Ronald D. Harris ("Ronald"), and Lhana Harris Barnes ("Lhana") are officers of WEI. Defendant Robert E. Harris, Jr. ("Robert Jr."), another Robert Sr. offspring, has been hired at times by WEI as a consultant. Defendant Walter F. Edwards ("Edwards"), Robert Sr.'s brother-in-law, has also been hired by WEI at times as a consultant.

In February 1988, Lawrence Gerard, (who later founded and became president of plaintiff WEL), was approached by a business acquaintance, who owned a WEI subfranchise licensed by Water Energizer Technology ("WET"), a WEI franchise. The acquaintance sought Gerard's financial assistance in operating the subfranchise. In late February, Gerard contacted Robert Sr. at WEI's headquarters to verify that WET was a lawful franchise. During that telephone call, and in a subsequent conversation in March 1988, Robert Sr. described the Water Energizer and how WEI's franchise system operated. Robert Sr. informed Gerard which franchises were still available in the United States and offered to send Gerard more information. Following the conversation, Robert Sr. sent Gerard a brochure describing the Water Energizer, testimonials, and sample franchise agreements. Gerard and Robert Sr. began exchanging telephone calls between New York and Indiana on a regular basis to discuss franchise opportunities.

On April 6, 1988, Gerard visited WEI headquarters in Indiana to inspect the operation before making an investment. Gerard met with Robert Sr. to discuss their respective businesses.

In May 1988, Robert Sr. telephoned Gerard in New York on several occasions to discuss franchise opportunities. On May 9, 1988, Gerard returned to WEI headquarters in Indiana for a two-day visit to paying customer installations in Indiana

and Kentucky in order to see installed Water Energizers at work. On May 11, 1988 and May 21, 1988, Robert Sr. made written offers to Gerard for the sale of Water Energizer franchises for Maryland, Washington D.C. and a portion of Pennsylvania. In late May or early June 1988, Robert Sr. met with Gerard, and his brother Mark Gerard, in Lawrence Gerard's New York office. At that meeting the parties negotiated and reached agreement on the essential terms of a franchise agreement covering Maryland and the District of Columbia.

Robert Sr. returned to Indiana and mailed a signed copy of a franchise agreement dated June 8, 1988, to Lawrence and Mark Gerard in New York, which they signed (the "Franchise Agreement"). An addendum to the Franchise Agreement set payment terms.

On June 8, 1988, the Gerards entered into an option contract with WEI for Water Energizer franchises in eighteen other states.

Sometime in June, 1988, Mark and Lawrence Gerard entered into an agreement with WEI, and Water Energizers, USA, Inc. ("WEUSA") whereby WEUSA, which held the franchise from WEI for the installation of Water Energizers in all United States government facilities, granted the Gerards the right to distribute Water Energizers to government facilities in the District of Columbia and adjacent territories. On June 29, 1988, the Gerards and WEI entered into a second addendum to the Franchise Agreement pertaining to certain indemnifications.

Subsequently, the Gerards formed WEL and assigned their right in the Franchise Agreement to WEL.

On July 5, 1988, WEL and WEI amended the Franchise Agreement to extend WEL's franchise rights to include the territory of California.

On February 1, 1989, WEI and WEL agreed to incorporate the Franchise Agreement, the addenda, the option agreement and the WEUSA agreement into a single document, and to make certain amendments to those agreements ("Amended Franchise Agreement"). The amendments included (i) designating Gerard Water Energizers Network, L.P. (the "Limited Partnership"), as the Franchisee and successor in interest to WEL, (ii) amendment of the territories under option, and (iii) an extension of the franchise to cover Nevada.

On September 19, 1989, the Amended Franchise Agreement was further amended to substitute WEL for the Limited Partnership as the franchisee.[1]

Contacts between Lawrence Gerard and Robert Sr. concerning WEI's and WEL's operations continued with regularity up until the time of Robert Sr.'s death in February 1990. Thereafter, plaintiff allegedly had numerous dealings with Rhonda, Ronald, Lhana, Robert Jr., and Edwards, relating to business between WEL and WEI. The details of these events, which indicate a deteriorating business relationship between WEL and WEI, have no bearing on the court's determination of the pending motions. It is sufficient for present purposes to note that events ultimately led to WEL filing this suit in February 1991.

## DISCUSSION

### I. *Personal Jurisdiction*

A federal court sitting in diversity determines personal jurisdiction by reference to the law of the forum state. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). Although the plaintiff bears the ultimate burden of establishing personal jurisdiction over a defendant by a preponderance of the evidence, the plaintiff initially need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials until an evidentiary hearing is held. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). In the evaluation of this initial *prima facie* showing, the plaintiff's affidavits and pleadings

---

1. It appears that WEL acquired franchise rights for Iowa, Maryland, Michigan, Nebraska, and Texas, as well as the aforementioned states. But the pleadings and affidavits do not make clear precisely when this occurred.

are construed in the light most favorable to the plaintiff, and doubts are resolved in plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ Plaintiff contends that jurisdiction over the defendants exists under either N.Y.Civ.Prac.L. & R. ("CPLR") § 301 because defendants were "doing business" in New York, or under CPLR § 302(a)(1), because they were "transacting business" in New York, or under CPLR §§ 302(a)(2)—(3) because the defendants committed fraud and fraudulent concealment within New York, or outside New York but causing injuries within New York.

■ The court finds that plaintiff has failed to make even a *prima facie* showing of personal jurisdiction as to the Estate of Robert E. Harris under any section of the CPLR. Defendants show, and plaintiff does not deny, that the Estate of Robert E. Harris Sr. does not exist, having been wound up prior to service of this action. *See* Affidavit of Ronald D. Harris ¶ 34 (dated April 23, 1991). Existence is surely a necessary requisite for this court's exercise of personal jurisdiction. *Cf. United States ex rel. Mayo v. Satan and his Staff*, 54 F.R.D. 282 (W.D.Pa.1971) (questioning exercise of personal jurisdiction over Satan). Because the Estate of Robert E. Harris does not exist, the court finds that it lacks personal jurisdiction over it. Accordingly, the complaint is dismissed as to the Estate of Robert E. Harris, Sr.

Because the court finds, for the reasons to be discussed below, that the remainder of the action should be transferred to Indiana, it is not necessary to reach the question of the existence of personal jurisdiction over the remaining defendants.

## II. *Transfer Pursuant to 28 U.S.C. § 1404(a)*

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision vests the district court with discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). As the moving party, defendants have the burden of showing that the transfer should be made. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

The Supreme Court has stated that when weighing transfer under § 1404(a), a forum-selection clause is "a *significant* factor that figures *centrally* in the District Court's calculus." *See Stewart Organization, Inc.*, 108 S.Ct. at 2244 (1988) (emphasis added). Defendants point to a provision in the franchise agreement between WEI and WEL that states: "The law and jurisdiction of Indiana shall govern in any action, to the extent permitted by applicable law." Amended Franchise Agreement, attached to Complaint as Exhibit H, ¶ 27. Defendants contend that this provision is a forum-selection clause that designates Indiana as the exclusive forum for litigation.

Plaintiff counters that what defendants identify as a forum-selection clause is (in addition to being a choice-of-law provision) actually a mere "jurisdictional empowerment" which entitles Indiana courts to adjudicate disputes relating to the agreement but does not mandate an Indiana forum. Plaintiff contends that had the defendants intended this provision to be a forum-selection clause they would have, and should have, referred in it specifically to "forum," "venue" or "courts" of Indiana. Plaintiff argues, in the alternative, that if the clause does select a forum, it does not designate Indiana as an *exclusive* forum for litigation but only as a permissible forum. *Credit Alliance v. Crook*, 567 F.Supp. 1462, 1464–1465 (S.D.N.Y.1983) (provision that parties "agree to venue and jurisdiction" of any New York court established New York is permissive, not exclusive forum selection); *First National City Bank v. Nanz, Inc.*,

437 F.Supp. 184, 186–187 (S.D.N.Y.1975) (forum-selection clause providing "New York courts shall have jurisdiction of any dispute" was not by its terms mandatory).

■ I find plaintiff's contentions unconvincing. There are no magic words, such as "forum" or "venue," that must appear in a contract to create an effective designation of an exclusive forum. Any language that reasonably conveys the parties' intention to select an exclusive forum will do. The word "jurisdiction" employed in this agreement conveys reference to the courts of Indiana as effectively as "forum" or "venue." The words "shall govern" show that the choice of Indiana courts was mandatory and not optional, as plaintiff contends. Although the phrase "the law and jurisdiction of Indiana shall govern" is not an exemplar of masterful drafting, its meaning is clear and unambiguous. Just as the statement "the law ... of Indiana shall govern" is surely a selection of Indiana law to the exclusion of other state's substantive law, so too the statement "the ... jurisdiction of Indiana shall govern" is plainly a designation of Indiana courts as the forum for litigation, to the exclusion of other fora. Plaintiff would have the court read "shall govern" as "may govern." To interpret "shall" as "may" offends ordinary usage; it would also make nonsense out of the part of the clause that states (using the same "shall") "the law ... of Indiana shall govern." Under plaintiff's reading, that clause would mean that the law of Indiana may govern. This was surely not what the parties intended. *See ASM Communications, Inc. v. Allen*, 656 F.Supp. 838, 839–840 (S.D.N.Y.1987) ("There is no basis in law, logic or policy

for straining to construe the word 'shall' [in a forum selection clause] ... as if it were a synonym for the word 'may,' which plaintiff now prefers"); *see also Bense v. Interstate Battery Systems of America, Inc.*, 683 F.2d 718, 722 (2d Cir.1982) (court should not adopt interpretation that "would render the forum selection clause meaningless"). The Second Circuit has construed similar contractual language stating that a court "shall" have "jurisdiction" as an exclusive designation of venue. *See Seward v. Devine*, 888 F.2d 957, 962 (2d Cir.1989) (interpreting provision that Delaware state court "shall have jurisdiction over all litigation" as "plain[ ] provi[sion]" that venue was to be limited solely to the state court in Delaware"); *cf. Sterling Forest Associates, Ltd. v. Barnett–Range Corp.*, 840 F.2d 249 (4th Cir.1988) (clause providing "venue shall be in California," was mandatory, not permissive, selection of forum).

■ As stated above, the parties' expressed preference for a forum (in this case, Indiana) is entitled to substantial consideration in determining whether to transfer a case under § 1404(a), *Stewart Organization, Inc.*, 108 S.Ct. at 2244, even though it is not dispositive. *See, e.g., Red Bull Associates v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988); *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F.Supp. 144, 151 (S.D.N.Y.1989).[2] Other factors must be considered. Ordinarily, a plaintiff's choice of venue at the time the suit is filed is entitled to substantial deference. *First National City Bank*, 437 F.Supp. 184, 188 (S.D.N.Y.1975). However, where, as here, the plaintiff has expressed a forum preference by entering a contract with a forum-selection clause, plaintiff's choice of forum

---

**2.** Defendants contend that a choice of forum clause is absolutely controlling on the question of transfer. The cases cited by defendants are not on point because they did not involve motions to transfer under § 1404(a). *Carnival Cruise Lines, Inc. v. Shute,* —— U.S. ——, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622 (1991); *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). On a motion to transfer pursuant to § 1404(a), "parties' private expression of their venue preferences" through a forum-selection clause is but

one factor, albeit a most significant factor, in considering the propriety of transfer. *See Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988); *see also id.* 108 S.Ct. at 2246 (Kennedy, J., concurring) ("the authority and prerogative of the federal courts to determine the issue, as Congress has directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases").

at the time the complaint is filed is of reduced importance. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989) ("In attempting to enforce the contractual venue, the movant [for transfer] is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen; the contractual venue. In such cases, we see no reasons why a court should accord deference to the forum in which the plaintiff filed its action"). *Cf. Full–Sight Contact Lens v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D.N.Y.1978) ("contractual provision for venue not only negates the deference traditionally accorded to the plaintiff's choice of forum, but weighs in favor" of defendant's preference for contractually designated forum).[3]

In addition to the signatories to the Amended Franchise Agreement containing the forum-selection clause designating Indiana, being plaintiff and WEI, the remaining defendants also chose Indiana as the place to litigate. Accordingly, the "convenience of the parties" factor tips entirely in favor of transfer.

The "convenience of witnesses" does not significantly alter the balance. The majority of party witnesses reside in or near Indiana. Plaintiff contends that it has approximately forty non-party witnesses who reside in New York.[4] Defendants identify thirteen non-party witnesses who reside in Indiana. This factor therefore tips somewhat in favor of New York, but hardly with enough weight to overcome the parties' preferred forum.[5] Similarly, no other factors alter the balance of convenience away from Indiana.

The only remaining question is whether the suit "might have been brought" in Indiana. Plaintiff contends that the suit could not have been brought in Indiana because at least one of the defendants doesn't reside in Indiana, and the applicable venue statute provides that a diversity action can be brought "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State...." 28 U.S.C. § 1391(a). Plaintiff conveniently ignores the remainder of the venue statute, which provides that a diversity action can also be brought in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a). Based on the record now before it, the court finds that venue in the Southern District of Indiana[6] would be proper under at least § 1391(a)(2), if not also under § 1391(a)(3) and that the suit therefore might have been brought in Indiana.[7]

Because this suit might have been brought in the Southern District of Indiana, because plaintiff entered into a contract to bring such a suit in Indiana,

---

**3.** The binding effect of the forum-selection clause on plaintiff is not undermined by the allegation of the complaint that plaintiff was induced to enter the franchise agreement with WEI. A forum-selection clause is enforceable, "except where the *clause itself* is procured by fraud." *Ritchie v. Carvel Corp.*, 714 F.Supp. 700, 703 (S.D.N.Y.1989) (emphasis in original).

**4.** Plaintiff names approximately twenty other non-party witnesses dispersed throughout the country in other states, who do not bear on the relative convenience of New York and Indiana.

**5.** A court ruling on such a motion may be somewhat skeptical as to the likelihood that such long lists of local witnesses will be found necessary once the issue of forum determination has passed. Even more doubtful is whether the court, in whatever place, would permit the parties to call so many nonparty witnesses. It can be assumed with confidence that the numbers of nonparty witnesses who will in fact be inconvenienced is but a tiny fraction of the number now asserted.

**6.** Defendants do not specify in which Indiana district, Northern or Southern, is proper. However, it is clear from the papers that a substantial part of the alleged events and omissions giving rise to the action occurred in the Southern District of Indiana, and that all defendants would be subject to the personal jurisdiction of the federal courts in the Southern District of Indiana.

**7.** Plaintiff admits that "[t]here is no dispute that WEL could have sued the defendants—except perhaps Mr. Edwards—in Indiana." Sur–Reply Affidavit of Donald S. Zakarin, Esq. ¶ 3 (June 26, 1991).

**214**

and because the balance of convenience favors suit in Indiana, the court finds that defendants' motion to transfer pursuant to 28 U.S.C. 1404(a) should be granted in the interests of justice.[8]

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is granted as to the Estate of Robert E. Harris.

Defendants' motion to transfer the case is granted as to the remainder of the defendants.

It is hereby ORDERED, that this action is transferred to the Southern District of Indiana. The Clerk shall transmit the file.

SO ORDERED.

---

**8.** In light of the foregoing determination, it is unnecessary to reach defendants' arguments pursuant to 28 U.S.C. § 1406 and *forum non conveniens.*