**FALCONWOOD FINANCIAL
CORPORATION,
Plaintiff,**

v.

**Mr. David B. GRIFFIN and Mrs.
David B. Griffin, Defendants.**

**No. 93 Civ. 1888 (PNL).**

United States District Court,
S.D. New York.

Dec. 1, 1993.

Cadwalader Wickersham & Taft, New York City, for plaintiff.

White Fleischner, New York City, for defendant.

### OPINION AND ORDER

LEVAL, District Judge.

Defendants' request three alternative forms of relief: (1) dismissal for lack of jurisdiction, improper venue and failure to join a party; (2) transfer to the Western District of Tennessee; or (3) a stay pending the resolution of a case filed by defendant against plaintiff in Tennessee.

#### Background

Plaintiff is a financial institution headquartered in New York, New York. Defendants, David and Roxie Griffin (hereinafter, "the Griffins"), are citizens of Arkansas. Plaintiff

contends that defendants have defaulted on substantial loans made under two security agreements, one between plaintiff and the Griffins, the other between plaintiff and Rivercrest Farms, a farming corporation owned by defendant David Griffin. The loans financed production of defendants' cotton crops, and were secured by those crops. Defendants agreed to produce and warehouse the cotton, and to give Falconwood warehouse receipts to secure Falconwood's interest in the warehoused cotton. Plaintiff's complaint states that, having determined under the agreements that its loans were undersecured, it demanded either partial payment or increased collateral. According to plaintiff, defendants failed to comply with this demand, placing them in default under the terms of the agreement. Plaintiff then instituted suit for payment of $2.1 million allegedly owed by the Griffins and $761,000 owed by Rivercrest Farms.

*Role of T & W*

According to defendants, a third party not before the court in this action played a significant role in the financing arrangements between Falconwood and themselves. That third party is Thompson and Wallace Memphis, Inc. ("T & W"), a cotton broker based in Memphis, Tennessee. Defendants say that they agreed with Falconwood to appoint T & W to sell the Griffins' warehoused cotton. According to the Griffins' version of the arrangement, Falconwood would release the warehouse receipts it held as security for the Griffins' debt to T & W, which would sell the warehoused cotton, and remit the proceeds to Falconwood for application against the Griffins' debt. Defendants contend that whatever debt they may have to Falconwood is due to errors made by T & W, Falconwood, or both, which resulted in a failure to properly credit defendants with the sale of some 9,000 bales of cotton, worth over $2.6 million.

*Prior effort to resolve issues*

Well before the filing of this action, Griffin and Falconwood began discussing the status of Griffin's account. (Aff. of James Van Dover, Griffin's attorney, at ¶ 3; Aff. of W. Rowlett Scott, Falconwood's Memphis attor-

ney, at ¶ 2.) After the circulation of proposals for an audit of the transactions among Griffin, Falconwood, and T & W failed to result in a signed agreement, Griffin, acting on behalf of himself and his farming corporation, brought suit against Falconwood and T & W on October 9, 1992, in the Western District of Tennessee. (Van Dover Aff. ¶¶ 5–7 and Exs. A–B.) This suit seeks a declaratory judgment of any indebtedness established by a master to be appointed by the court to audit all records of the parties. (Complaint attached to Aff. of Patti Potash, Griffin's New York counsel, as Ex. B.) Defendants submit an exchange of correspondence between counsel for Falconwood and for Griffin, showing that discussions among the parties were continuing, and that Griffin held off on service of the Western District suit and assured Falconwood's local counsel that service would not be made without advance notice. Falconwood, Griffin and T & W eventually agreed to hire an accounting firm to perform an audit of all transactions among the parties to determine the "appropriate state of accounts" between them. (Agreement, attached as Ex. E to Van Dover Aff.) The audit ultimately produced inconclusive results. (Letter of Ernst & Young to three parties, dated Feb. 12, 1993, attached as Ex. 4 to Aff. of Bob Lee, Griffin's CPA.) On March 23, 1993, the suit in this court was filed. On April 2, 1993, both Falconwood and T & W were served with the complaint in the Tennessee action.

*Discussion*

A. *Jurisdiction and venue*

Defendants move for dismissal on the ground that this court lacks personal jurisdiction over them, or alternatively that venue is improper in this district.

The security agreements signed by the defendants include a forum selection clause whereby the borrower submits to the jurisdiction of this court, designates New York State law to govern the contract, and selects the Southern District of New York (or New York State court) as the exclusive venue for suit with respect to the agreement.[1] Settled

---

1. The clause reads:
 8(a). Jurisdiction; Governing Law. The Bor-
 rower hereby submits to the jurisdiction of the courts of the State of New York and of the

law permits parties to a contract to select in advance the forum for litigation of disputes that arise under the contract. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.Ct. 411, 414–15, 11 L.Ed.2d 354 (1964); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590–96, 111 S.Ct. 1522, 1526–28, 113 L.Ed.2d 622 (1991). These parties contracted to brings such actions here, in the Southern District of New York, and to that end, consented to personal jurisdiction here.

■ Limits on a court's jurisdiction over the person of a defendant exist to protect individuals from being haled into distant courts to defend their interests. As protections of personal rights, they may be waived. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). Defendants submitted to the jurisdiction of this court when they signed their security agreements with plaintiff. They do not claim that they were fraudulently induced to agree to this provision in their contracts.[2] I find that defendants waived any objection to the court's personal jurisdiction over them when they signed the security agreements. On that ground, I deny their motion to dismiss the action for lack of personal jurisdiction.

■ The motion to dismiss for improper venue is denied on the same grounds. Venue is proper in this diversity action in "a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a)(3). The defendants have made themselves subject to the personal jurisdiction of this court. By operation of § 1391, venue is proper here.

### B. Transfer to Western District of Tennessee

Defendants move in the alternative for a transfer of this action to the Western District of Tennessee.

### 1. Impact of forum selection clause

■ While the forum selection clause guarantees that this action shall not be dismissed for improper venue, it does not, for the reasons explained below, prevent the Court from considering this motion for a change of venue. The motion is brought under 28 U.S.C. § 1404, which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Plaintiff, opposing transfer, makes much of cases, such as *Leasing Service Corp. v. Patterson Enterprises, Ltd.*, 633 F.Supp. 282 (S.D.N.Y.1986), that suggest there is a "waiver of § 1404 analysis," *id.* at 284, when, as here, the contract chooses an "exclusive" forum for decision of disputes. According to plaintiff, the designation of New York in the forum selection clause as the "exclusive" forum for any disputes strips any other jurisdiction of authority over this matter.

Despite the suggestive language in *Leasing Service*, plaintiff's position overstates the rule. The Supreme Court has held that the parties' contractual agreement that a particular forum shall have "exclusive jurisdiction" over disputes is a "significant factor that figures centrally in the district court's calculus" under § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). However, *Stew-*

federal courts of the Southern District of New York with respect to any litigation arising out of this Agreement, and hereby appoints The Prentice–Hall Corporation System, Inc., the present address of which is 521 Fifth Avenue, New York, New York 10017, a agent to receive service of process in respect of any such litigation. **THIS AGREEMENT AND ITS ENFORCEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK....** The parties hereby agree that the exclusive venue for suit with respect to this

Agreement shall be the courts of the State of New York or the federal courts of the Southern District of New York....

**2.** A showing that bad faith motivations for the choice of forum, or of fraud or overreaching in obtaining consent to the clause, may also be reason for a court to override the clause. *Carnival Cruise Lines*, 499 U.S. at 595, 111 S.Ct. at 1528; *Ritchie v. Carvel Corp.*, 714 F.Supp. 700, 702–03 (S.D.N.Y.1989). Defendants make no such allegations here.

*art* makes clear that such a clause is *not* dispositive of a motion to transfer under § 1404(a). While the courts seek generally to give effect to the private ordering of affairs achieved by contracting parties (a goal that in this case would require enforcement of the forum selection clause), the Court in *Stewart* wrote that § 1404(a) requires consideration of other interests:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice."

*Id.* at 30, 108 S.Ct. at 2244.

*Stewart* involved a contract that gave one forum "exclusive jurisdiction," *id.* at 24, n. 1, 108 S.Ct. at 2241, n. 1 (reciting text of clause); the Court did not treat this clause as dispositive, but instead remanded the case for the District Court to determine "the appropriate effect under federal law of the parties' forum-selection clause on respondent's § 1404(a) motion." *Id.* at 32, 108 S.Ct. at 2245. *See also Water Energizers, Ltd. v. Water Energizers, Inc.,* 788 F.Supp. 208, 212–13 (S.D.N.Y.1992) (conducting analysis under § 1404 after finding that choice of forum clause was mandatory, and rejecting contention that choice of forum clause is "absolutely controlling").

■ Although the existence of a forum selection clause does not foreclose the court from deciding that the case should be heard in a different forum from that chosen, "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Recent cases stress that the party seeking to avoid such a clause must satisfy a "heavy burden of proof" to convince the court that the "serious inconvenience of the contractual forum" warrants setting aside the forum selection clause. *Bremen,* 407 U.S. at 17, 92 S.Ct. at 1917;

*Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, ——, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991).

While the forum selection clause in the parties' contract does not preclude this court from granting defendants' motion for a change of venue, the choice of forum already made by the parties should be given considerable weight in the court's analysis. That analysis follows.

### 2. *Analysis under 28 U.S.C. § 1404*

Section 1404(a) names three factors to be considered in the transfer of a case: the convenience of parties, the convenience of witnesses, and the interest of justice.

#### a. *Convenience of parties*

■ In a case where the parties have already agreed to a particular forum, the "convenience of parties" weighs heavily in favor of hearing the case in the designated court. Defendants now protest that they will be seriously inconvenienced by defending this case in New York, but their prior agreement to this forum in effect substantively rebuts arguments as to their personal convenience. *See Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 758 (3d Cir.1973); *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71, 74 (S.D.N.Y.1978); *cf. Carnival Cruise,* 499 U.S. at 593–94, 111 S.Ct. at 1527 (noting that cruise ship passengers likely benefited indirectly from choice of forum clause in form contract). The convenience of parties would thus appear better served by going forward in this district.

#### b. *Convenience of witnesses*

■ Defendants claim that witnesses vital to their defense are not subject to this court's subpoena power and so cannot be made to testify in person. (Griffin Aff. at p. 2; Van Dover Aff. ¶ 10; Potash Aff. ¶ 14.) A party making a motion to transfer on the ground that witnesses will be inconvenienced is obliged to specify the witnesses to be called and to describe generally what they will say, thereby providing the judge with enough information to weigh the importance of witness convenience against other factors.

*See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978); 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3851, at 425 (2d ed. 1986). Defendants have not provided this information. Defendant Griffin's affidavit names ten witnesses who he says are "material" to his defense, but fails to say anything about the substance of their testimony. (Griffin Aff. at 2.) Defense attorney Van Dover's affidavit states that employees of the Memphis office of the accounting firm Ernst & Young are needed to testify about the audit they performed of the parties' accounts, but Van Dover fails to name these witnesses. These failings in defendants' argument that witnesses will be inconvenienced prevent the court from giving this factor much credit or weight.

### c. *Availability of books and records*

 The availability of books and records to the court is not named in § 1404(a), but courts frequently consider this factor in motions to transfer venue. *See, e.g., Babbidge v. Apex Oil Co.*, 676 F.Supp. 517, 521 (S.D.N.Y.1987); *Mobil Corp. v. SEC*, 550 F.Supp. 67, 70 (S.D.N.Y.1982); Wright et al., *supra*, § 3853 ("The location of records and documents is a factor that should be considered in determining the proper forum."). This is not a compelling consideration when records are easily portable, but becomes weightier when transfer will bring necessary records within the subpoena power. *Id.* ("[I]f transfer will bring needed records within the subpoena power ... the court will consider the location of those records in passing on the transfer application."). As with the argument that witnesses will be inconvenienced, the moving party must establish the location and importance of the documents in question. *Id.; Babbidge v. Apex*, 676 F.Supp. at 521.

Defendants claim that records possessed only by the Memphis cotton broker T & W are essential to the resolution of this case. (Potash Aff. ¶ 11; Van Dover Aff. ¶ 10.) Defendants propose that their access to these records will be guaranteed by transfer of this case to Tennessee, where T & W is a party in their pending case. Plaintiff, however, points out that defendants may avail themselves of the discovery provisions of the federal rules to have a subpoena duces tecum issued to T & W by the district court where T & W is subject to process, thereby obtaining the documents needed. Fed.R.Civ.Pro. 45(a)(1), (a)(3); *see In re Guthrie*, 733 F.2d 634, 638 (4th Cir.1984); 1991 Advisory Committee's Notes to Fed.R.Civ.Pro. 45. Plaintiff is correct about the scope of discovery available to defendants, yet its argument is not wholly satisfactory, for two reasons. One is that under Rule 45(a)(2), defendants cannot compel T & W's attendance to testify at a trial in this district, depriving the factfinder in this case of the opportunity to have whatever documents defendants seek to introduce explained by those who authored them. The other shortcoming is that as a non-party to this action, T & W's production of documents may be limited by the protection afforded by Rule 45(c)(2)(B). This provision states that an order to compel document production by non-parties will not expose non-parties to "significant expense" resulting from the production.

Contrary to defendants' argument, then, a trial here would not deprive defendants of documentary evidence they claim is necessary to defend themselves; contrary to plaintiff's contentions, the evidence available to defendants in this venue is not identical in quality to that available to them in the venue where they hope to transfer the case.

### d. *Interest of justice*

 Section 1404(a) also directs the court to consider whether a proposed venue change serves the "interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (Section 1404(a) empowers district court to transfer case if transfer "is warranted by the convenience of parties and witnesses and promotes the interest of justice"); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (district court must consider "public-interest factors" that comprise "the interest of justice"); Wright et

al., *supra*, § 3854, at 439.[3] "Interest of justice" encompasses the private and public economy of avoiding multiple cases on the same issues. *See Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960) ("to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent"); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir.1986).

Defendants contend that the interest of justice requires transfer of this action to Tennessee, where the cotton broker, T & W, can be joined as a party.[4] Plaintiff claims in opposition that defendants' obligations can and should be adjudicated entirely separate from any obligations of T & W.

I find, for the reasons below, that the alleged role of T & W in this dispute implicates the "interest of justice" and supports granting defendants' motion to transfer the action.[5]

Defendants describe the role of T & W as follows. The Griffins produced cotton with loans from Falconwood. To secure those loans, they delivered warehouse receipts for cotton to Falconwood. From time to time, Falconwood released receipts for the Griffin's cotton to T & W, a cotton broker. T & W sold the cotton, and remitted the proceeds to Falconwood to be applied against the Grif-fins' debt. (Van Dover Aff. ¶ 2.) The Griffins contend that they delivered warehouse receipts to Falconwood for a quantity of cotton whose sale would have been sufficient to pay their debt to Falconwood in full. They claim that errors in the accounting between T & W and Falconwood caused the shortfall that Falconwood now seeks to recover from the Griffins.

While defendants have produced only scanty evidence of the claimed arrangement with Falconwood and T & W,[6] plaintiff has not disputed any significant aspect of it, except to quibble over whether T & W was the "joint agent" of the parties in this action.[7] Moreover, the record shows that David Griffin, T & W, and Falconwood agreed on November 6, 1992, to jointly finance an audit of "all transactions" among them, "in order to determine the appropriate state of accounts between the parties." (Azzara Aff. ¶ 2 (attached as Ex. 3 to Haveles Aff.); Van Dover Aff. Ex. E.) The audit was undertaken after defendants brought suit in Tennessee against plaintiff and T & W, seeking an accounting and a declaratory judgment of the three entities' accounts. The affidavit of plaintiff's attorney H. Peter Haveles confirms that this audit concerned "the transactions at issue in the Tennessee Action and in this action," (Haveles Aff. ¶ 4), which tends to support defendants' contention that the issues in this action are the same as those in the Tennessee action.

3. Although the phrasing of § 1404(a) does not make it entirely clear that the "interest of justice" was originally intended as a separate criterion for deciding motions to transfer, the cited cases establish that the court must consider it as a factor.

4. Plaintiff has not contested defendants' assertion that T & W, a Tennessee corporation, is not subject to the jurisdiction of this court. The corporation is apparently located in Memphis, Tennessee. Memphis is within the Western District of Tennessee.

5. Defendants also move to dismiss the action under Federal Rule of Civil Procedure 19(b), on the ground that T & W is an indispensable party that cannot be joined. Because I find, for the reasons that follow, that the alleged role of T & W in this dispute implicates the "interest of justice," I make no finding as to whether T & W is an indispensable party.

6. Statements in the affidavit of defendants' attorney Van Dover about the financing arrangement are of limited probative value, given that, by his own admission, he did not represent defendants in matters involving Falconwood and T & W until September 1992 (Van Dover Aff. ¶ 1), necessarily some time after the financing of defendants' 1991 and 1992 cotton crops must have been arranged.

7. *See* Goldflam Aff. ¶¶ 3–4. Not only does plaintiff fail to dispute the role of T & W in its transactions with defendants; plaintiff also does not present any evidence to counter the affidavit of defendants' accountant that a review of Falconwood's ledger shows several instances in which Falconwood released defendants' collateral to T & W without any subsequent reduction in defendants' loan balances. (Lee Aff. ¶ 4, attached to Van Dover Reply Aff.)

It is apparent from this record that the picture of events pertinent to repayment of the Griffins' debt to Falconwood cannot be complete without consideration of T & W's transactions with Falconwood. Should plaintiff's suit go forward in this district as filed, there will ultimately be two trials on these issues, for the simple reason that there can be no judgment against T & W in this court because T & W is beyond the court's jurisdiction. To the extent that the "interest of justice" requires conservation of judicial resources, this factor favors transferring the action to Tennessee.

It appears that the principal, perhaps only, serious issue in contention in the dispute between Falconwood and the Griffins is the accounting for T & W's sales of defendants' crops. Defendants have shown substantial reason to believe that defendants did not get credit on plaintiff's books for sales by T & W. In these circumstances, it appears that justice would be ill served by conducting the litigation in a venue where T & W can neither be joined nor required to testify.

This therefore appears to be the very rare case where, in spite of defendants' agreement to the exclusive jurisdiction of this court, a motion to transfer in the interest of justice will prevail. Defendants have demonstrated that enforcement of the forum selection clause would be unreasonable under the circumstances, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Accordingly, their motion for a change of venue is granted.

This action shall be transferred to the Western District of Tennessee.

### Conclusion

Defendants' motion to transfer this action to the Western District of Tennessee is granted. The Clerk shall transmit the file.

SO ORDERED: