**MEETINGS & EXPOSITIONS, INC.,**
Plaintiff-Appellant,

v.

**TANDY CORPORATION,**
Defendant-Appellee.

No. 606, Docket 73–2571.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1973.

Decided Jan. 9, 1974.

John G. Ledes, New York City (Gabriel I. Levy, and Levy & Ledes, New York City, of counsel), for plaintiff-appellant.

Alexander R. Hamilton, New York City (J. Frederic Taylor, and Burke & Burke, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, MANSFIELD and OAKES, Circuit Judges.

PER CURIAM:

The complaint in this diversity action, filed in the District Court for the Southern District of New York on October 2, 1973, was for breach of a contract between plaintiff, Meetings & Expositions, Inc., and Storm Printing Company (Storm). Under the contract, Storm agreed to print the September, 1973, issue of plaintiff's magazine which was intended for distribution at a trade show in Detroit. The complaint alleged that defendant Tandy Corporation (Tandy) was a Delaware corporation having its principal place of business in Fort Worth, Texas; that Tandy, "a conglomerate of various divisions and companies engaged in diversified activities throughout the United States," maintained offices for the transaction of business within the Southern District of New York; and that Storm was part of one of the divisions of Tandy and had its principal place of business in Dallas, Texas. The judge signed an order submitted along with the complaint requiring Tandy to show cause on October 3 why the court should not issue a preliminary injunction restraining Storm, which allegedly had breached its contract, from retaining possession of various materials that plaintiff had furnished and from interfering with the printing and publication of plaintiff's magazine. On the return day Tandy submitted a cross-motion to dismiss pursuant to F.R.Civ.P. 12(b)(2). This was supported by an affidavit of its attorney, which alleged that the offices of Tandy mentioned in the complaint were not business offices but merely retail outlets of Tandy's "Radio Shack" division; that Storm was not a division of Tandy but rather of Trinity Forms Company (Trinity), a Texas corporation which was in turn a wholly-owned subsidiary of Tandy; and that Trinity was a viable corporate entity with its own board of directors, a majority of whom were not officers or directors of Tandy. Without giving plaintiff an opportunity to answer the affidavit, the judge heard argument on the motion to dismiss and indicated that he would render a decision on the following day. During the argument he suggested the possibility of settlement.

The parties acted on this suggestion and executed what they termed an "Agreement and Stipulation of Settlement," which Judge Duffy approved on

October 4.[1] Tandy agreed to cause Storm to deliver to plaintiff in New York on October 4 fifty copies of the magazine against receipt of plaintiff's check for $7500 personally guaranteed by plaintiff's president, and also to cause Storm to ship or deliver another 500 copies in accordance with plaintiff's instructions. By noon on October 9 plaintiff was to replace its $7500 corporate check with a certified, cashier's or bank check of the same amount, to be delivered in New York to Tandy's attorneys. Thereafter Tandy would cause Storm to ship or deliver the remaining copies of the magazine and various advertising materials in accordance with plaintiff's instructions. It was agreed that Storm would not be required to pay or advance any shipping or delivery costs. If plaintiff failed to deliver the check, the clerk, upon an affidavit of default by one of Tandy's attorneys, was to enter judgment against plaintiff in the sum of $9800 plus costs. Upon full performance of the agreement, the parties were to file with the court a further stipulation dismissing the action with prejudice.

Plaintiff claims that it timely delivered the certified check, and concedes that Tandy met its obligations under the settlement agreement to the extent of arranging for delivery of the first 550 copies of the magazine. However, it alleges that Tandy failed to cause Storm to deliver to the Dallas Postmaster the remaining 32,000 copies in accordance with its instructions. Accordingly, on October 17, plaintiff submitted to Judge Duffy an order requiring Tandy to show cause why it should not be punished for contempt. For two days the judge declined to sign the order to show cause. Then, on the afternoon of October 19, he filed an order, supported by a two-page opinion, dismissing the action for lack of *in personam* jurisdiction over Tandy. While the opinion referred to the settlement agreement, there was no discussion of its effect on the jurisdictional dispute. The opinion concluded:

> Rather than perpetuate the needless charade to maintain this action on the books of this District, it is hereby ordered that the case be dismissed in its entirety.

After plaintiff filed a notice of appeal, the judge substituted a revised and somewhat longer opinion. The new material included a reference to a New York principle that "absent an agency relationship or facts sufficient to pierce the corporate veil a parent corporation is not subject to jurisdiction because of the activities of a subsidiary." The court then concluded that plaintiff had failed to show an agency relationship or facts that would justify the "piercing of the corporate veil"—a conclusion that was quite irrelevant to a case where the parent was subject to jurisdiction because of its own activities in New York. Proceeding to the settlement agreement, the opinion sought to dispose of this on the basis that F.R.Civ.P. 12(b) permits a general appearance without waiver of a timely motion to dismiss for lack of personal jurisdiction, citing Judge Maris' opinion in Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3 Cir.), cert. denied, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944), and 2A Moore, Federal Practice, ¶ 12.12, at 2325 n. 17 (2d ed. 1972). The "charade" sentence remained.

■■ The judge's action was wholly unjustified. His ruling that Tandy's motion to dismiss for lack of jurisdiction should have been granted since Storm was a division of Trinity rather than of Tandy misconstrued the issue as being one of jurisdiction over Trinity and Storm, whereas the named defendant was Tandy and personal jurisdiction over it was not disputed. To be sure, if there was no agency relationship or basis for piercing the corporate veil, the

---

1. The settlement agreement was entitled in the action in the usual manner and "So Ordered" by Judge Duffy at the foot of the agreement.

complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim on which relief could be granted against Tandy, and Tandy now asks us to uphold the order on the ground that its motion was in effect a "speaking motion" for summary judgment under that subsection. But Tandy had not asked for such relief below. Even if it had, plaintiff would have been entitled to submit opposing affidavits and, if need be, to have discovery. Plaintiff was given no opportunity to do this on October 3 and had no reason to do so after the stipulation had been executed and approved by the judge on October 4.

Indeed, execution of the stipulation rendered the previous controversy academic. A stipulation and agreement of settlement, entitled in the action and "so ordered" by the judge, is quite different from a general appearance. Whether or not the court previously had personal jurisdiction over Tandy, the stipulation was a consent to the exercise of the court's power to compel compliance. We thus do not need to rely on such additional circumstances as that the negotiation and signing of the settlement agreement in New York very likely would have subjected Tandy to suit in New York under the New York long-arm statute, CPLR § 302(a)(2), McKinney's Consol.Laws, c. 8, if personal jurisdiction had not already existed, and that Tandy's agreeing to "cause" Storm to do various things gives at least some support to the idea that an agency relationship did exist.

While the district court had not only the power but the duty to enforce a settlement agreement which it had approved, it is not clear whether contempt was the proper remedy. We need not decide that issue now. In both the proposed order to show cause and the affidavit in support of the contempt motion, plaintiff sought such further

and different relief as might be proper, and added that "if plaintiff has not prayed for proper, and sufficient relief," it should be granted any appropriate relief "to which it might be entitled." A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it. J. Kahn & Co. v. Clark, 178 F.2d 111 (5 Cir. 1949); E. L. "Bunch" Hullet, Inc. v. Universal C.I.T. Credit Corp., 259 F.2d 685, 688 (10 Cir. 1958); Cia Anon Venezolana de Navegacion v. Harris, 374 F.2d 33 (5th Cir. 1967); Autera v. Robinson, 136 U.S. App.D.C. 216, 419 F.2d 1197 (1969); Beirne v. Fitch, 167 F.Supp. 652, 654 (S.D.N.Y.1958).[2] Although there may be instances when the facts at issue are so complex that summary enforcement is not proper, see Autera v. Robinson, supra, 419 F.2d at 1200, this case is not one of them. After giving Tandy an opportunity to present by affidavit any facts that are alleged to justify its non-compliance and plaintiff an opportunity to reply, the court should enter an appropriate order. Naturally, the court should take into account the $7500 plaintiff claims to have paid under the settlement agreement, which the court's order of dismissal has apparently allowed Tandy to retain. If, because of the delay in the delivery of the magazines, an order directing compliance with the terms of the settlement agreement would not now afford plaintiff satisfactory relief, the court should order such other relief as it deems proper under the circumstances. In the alternative, plaintiff is, of course, free to seek its remedy in a suit against Tandy for breach of the settlement agreement. J. Kahn & Co. v. Clark, supra, 178 F.2d at 114.

The order dismissing the complaint is reversed and the cause is remanded for further proceedings, consistent with this opinion, before another judge.

2. The same result would obtain even if the court's power to enforce the settlement agreement in this diversity case were controlled by New York law. Yonkers Fur Dressing Co. v. Royal Ins. Co., 247 N.Y. 435, 444, 160 N.E. 778 (1928); William Randall & Sons v. Garfield Worsted Mills, 178 App.Div. 196, 165 N.Y.S. 125 (2d Dep't 1917); Berlowitz v. Horowitz, 250 App.Div. 728, 293 N.Y.S. 450 (2d Dep't 1937).