**SCOTTISH AIR INTERNATIONAL, INC. and Murray Vidockler, Plaintiffs,**

v.

**BRITISH CALEDONIAN GROUP, PLC., Adam Thomson, Dennis H. Walter, and R. Marshall Gibson, Defendants.**

No. 85 Civ. 0341 (SWK).

United States District Court, S.D. New York.

Dec. 6, 1993.

Beckman, Kirstein & Murphy by Robert M. Beckman, David M. Kirstein, Washington, DC, Stillman, Friedman & Shaw, P.C. by

Charles A. Stillman, New York City, for plaintiffs.

Laventhall & Zicklin by Robert Zicklin, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this diversity action for breach of contract and contempt of a May 25, 1966 Order, entered by this Court in the case of *Scottish Air Int'l, Inc. v. Thomson,* 65 Civ. 1782 (S.D.N.Y.1965), defendants now move: (1) pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss plaintiffs' claim of contempt of the May 25, 1966 Order; and (2) for reaffirmation of Judge David N. Edelstein's December 4, 1990 Amended Opinion and Order dismissing the balance of this action on the ground of *forum non conveniens* and denying plaintiffs leave to file a Second Amended Complaint and to add British Airways, PLC ("British Airways" or "BA") as a party. In response, plaintiffs move, pursuant to Rules 15(a) and (d), 19 and 25(c) of the Federal Rules of Civil Procedure, for leave to file a Third Amended and Supplemental Complaint including allegations of fact that have occurred or been discovered since the First Amended Complaint was filed in 1986, and to add British Airways as a necessary and indispensable real party in interest. Plaintiffs also request that this Court (1) rescind Judge Edelstein's December 16, 1991 Order prohibiting discovery; and (2) adjourn consideration of defendants' motion to dismiss on the grounds that it is directed to the First Amended Complaint, and will become moot by the proposed Third Amended and Supplemental Complaint.[1]

## BACKGROUND

The factual background of this litigation has been set forth by both this Court in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 751 F.Supp. 1129 (S.D.N.Y. 1990) and the Second Circuit in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57 (2d Cir.1988) and *Scottish Air*

1. As plaintiffs contend that defendants' motion for summary judgment will become moot by the filing of the proposed Third Amended and Sup-
plemental Complaint, plaintiffs have not submitted any papers responding to defendants' motion for summary judgment.

*Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53 (2d Cir.1991). Therefore, for purposes of this Opinion, only the relevant facts will be summarized herein.

Plaintiff Scottish Air International, Inc. ("SAI") is a dissolved corporation formerly existing under the laws of the State of New York. Previously, SAI was a holding company which owned shares in defendant British Caledonian Group, PLC ("BCG"). Plaintiff Murray Vidockler ("Vidockler") was the president and majority shareholder of SAI.

In 1961, SAI provided investment capitol to BCG's operating company, Caledonian Airways (Prestwick) Ltd. ("CAP"), and thus, became the sole United States shareholder of CAP.[2] In July 1965, SAI commenced a shareholder derivative suit against CAP and several members of its board of directors, alleging improper use of corporate funds and improper issuance of shares. *Scottish Air Int'l, Inc. v. Thomson,* 65 Civ. 1782 (S.D.N.Y. filed July 7, 1965). In January 1966, the parties entered into a settlement agreement which was approved and "So Ordered" by Judge Dudley Bonsal (the "1966 Settlement Agreement"). Among other things, the 1966 Settlement Agreement provided that an individual nominated by SAI would be appointed to CAP's board of directors. Plaintiffs allege that through the settlement and subsequent agreements, SAI was given a similar right to nominate a representative to BCG's board of directors. Thereafter, SAI designated Vidockler to serve on CAP's board. From 1966 until 1985, Vidockler was consistently elected to the boards of directors of both CAP and defendant BCG, CAP's majority shareholder.

In 1985, Vidockler was removed from BCG's board of directors, and advised that no further representatives of SAI would be nominated to sit on the board. In response, SAI and Vidockler brought the present suit, alleging that SAI had a right to place Vidockler or another SAI representative on the BCG board. According to plaintiffs, this right stemmed from agreements between the parties, including the 1966 Settlement Agreement. Plaintiffs sought (1) an injunction directing the defendants to comply with the 1966 Settlement Agreement; (2) a declaration that the defendants were in contempt of the 1966 Settlement Agreement; and (3) money damages for breach of contract.

In May 1986, defendants moved to dismiss the complaint on the grounds that (1) the Court lacked personal jurisdiction over the defendants; (2) the plaintiffs failed to join all shareholders of BCG who were necessary to effect the election of Vidockler to the board of directors; (3) ordering the election of Vidockler to the board would constitute interference with the internal operations of a foreign corporation; and (4) the Court should decline jurisdiction under the doctrine of *forum non conveniens.*

Before the Court rendered a decision regarding the defendants' motion, British Airways made a successful tender offer for the shares of BCG. Plaintiffs then informed the Court that, as a result of the tender offer, BCG had essentially ceased to exist, rendering moot plaintiffs' request for injunctive relief reinstating Vidockler to BCG's board of directors.

Thereafter, on April 15, 1988, the Court dismissed this action on the grounds of *forum non conveniens,* subject to the defendants' agreement to continue the litigation in the United Kingdom (the "April 15th Order"). On October 31, 1988, the Second Circuit reversed and remanded the Court's April 15th Order, holding that the Court had failed to consider SAI and Vidockler's contempt and damages claims. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57 (2d Cir.1988) ("*Scottish Air I* "). Noting that "in dismissing plaintiffs' complaint on the basis of *forum non conveniens,* the [district] court focused exclusively on plaintiffs' prayer for an injunction reinstating Vidockler to BCG's board of directors," the Second Circuit found that the prayer for injunctive relief was moot, *id.* at 59, and that "the district court erroneously failed to consider [the plaintiffs'] remaining claims for breach of contract and for a finding of contempt of the 1966 order," *id.*

---

2. CAP and BCG were formed at the same time. All of BCG's directors were also directors of CAP. CAP was one of BCG's operating subsidiaries.

Following remand, plaintiffs then moved, pursuant to Fed.R.Civ.P. 19(a)(1), to add British Airways as an indispensable party and, pursuant to Federal Rule of Civil Procedure 15(a) and (d), to amend and supplement the complaint in order to add claims that they were not allowed to trade their shares of BCG for shares of British Airways during British Airway's tender offer for BCG, but were instead forced to take cash.

In an amended Opinion dated December 4, 1990, the Court denied plaintiffs' motion and dismissed the contempt claim pursuant to a *sua sponte* determination in favor of defendants. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 751 F.Supp. 1129 (S.D.N.Y.1990) (*"Scottish Air II"*). The remaining claims were once again dismissed under the doctrine of *forum non conveniens*, subject to defendants' agreement to continue the litigation in the United Kingdom. The plaintiffs appealed on the grounds that (1) the district court erred in granting *sua sponte* summary judgment on the contempt claim; (2) the court abused its discretion in dismissing on the basis of *forum non conveniens;* and (3) the motion to add British Airways as a necessary party should be granted.

On September 23, 1991, the Second Circuit again reversed and remanded on the ground that the district court failed to provide plaintiffs with notice and an opportunity to oppose the entry of summary judgment. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 945 F.2d 53 (2d Cir.1991) (*"Scottish Air III"*). Specifically, the Second Circuit determined that:

> [T]he defendants did not move for summary judgment and the plaintiffs were not provided with notice and an opportunity to oppose the entry of summary judgment.... [Thus,] [i]n light of the district court's disposition, herein via its summary judgment analysis, the failure to provide notice to the plaintiffs, and there being no suggestion in the record on appeal that the plaintiffs had adequate notice of the possibility of the entry of summary judgment, we reverse the judgment of the district court and remand for further proceedings.

*Id.* at 55 (citations omitted). The Second Circuit declined to address either the district court's application of the *forum non conveniens* factors, or its determination that British Airways was not a necessary party. *Id.*

Promptly after the Second Circuit's mandate on remand was issued, plaintiffs served a notice to take the deposition of defendant Adam Thomson ("Thomson"). By Order dated December 16, 1991, the Court nullified the notice, stating:

> Plaintiff's notice to take the deposition of Adam Thomson, dated October 31, 1991, was issued in violation of this Court's prior ruling and is of no force and effect. No further discovery shall be taken in this cause except upon the prior order of this Court.

*See* Order, dated Dec. 16, 1991, annexed to Letter from Robert M. Beckman to the Honorable Shirley Wohl Kram of 11/24/92, as Exh. "A."

On October 28, 1992, this case was reassigned. Defendants now move (1) pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing plaintiffs' contempt claim; and (2) for reaffirmation of *Scottish Air II*, dismissing the balance of this action on the ground of *forum non conveniens* and denying plaintiffs leave to file a Second Amended Complaint and to add British Airways as a party. In response, plaintiffs move: (1) pursuant to Fed.R.Civ.P. 19 and 25(c), for leave to file a Third Amended and Supplemental Complaint; (2) pursuant to Rule 15(a) and (d), for leave to add British Airways as a necessary and indispensable party; (3) for an order rescinding Judge Edelstein's December 16, 1991 Order prohibiting further discovery; and (4) for an order adjourning consideration of defendants' motion to dismiss on the grounds that it is directed to the First Amended Complaint, and will become moot with the filing of the proposed Third Amended and Supplemental Complaint.

## DISCUSSION

**I. Order in Which Motions Should be Considered**

Presently before the Court are seven motions: defendants' motions to (1) dismiss

plaintiffs' claim for money damages on the grounds of *forum non conveniens;* (2) dismiss plaintiffs' contempt claim; and (3) deny plaintiffs leave to file a Second Amended Complaint and to add British Airways as a party, and plaintiffs' motions (1) for leave to file a Third Amended and Supplemental Complaint; (2) for leave to add British Airways as a necessary and indispensable party; (3) for an order rescinding·Judge Edelstein's December 16, 1991 Order prohibiting further discovery; and (4) for an order adjourning consideration of defendants' motion to dismiss and motion for summary judgment on the ground that they are directed to the First Amended Complaint, and will become moot by the proposed Third Amended and Supplemental Complaint. In addition to these seven motions, however, the Court notes that defendants' May 1986 motion to dismiss the action for lack of personal jurisdiction has never been addressed, and thus, also remains pending. As the Court may not consider a *forum non conveniens* motion unless there is personal jurisdiction over the parties, *see Allstate Life Ins. Co. v. Linter Group Ltd.,* 782 F.Supp. 215, 219 (S.D.N.Y. 1992), the jurisdictional issue must be decided first. Accordingly, the Court will address defendants' May 1986 motion to dismiss for lack of personal jurisdiction before reaching the seven other motions.

## II. Personal Jurisdiction

■ In a diversity action, in order to defeat a motion to dismiss for lack of jurisdiction, plaintiff has the ultimate burden of establishing jurisdiction over the defendant by a preponderance of the evidence. *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983); *Allstate Life Ins. Co. v. Linter Group Ltd.,* 782 F.Supp. at 219–20. Initially, however, until an evidentiary hearing is held, the plaintiff may satisfy his or her burden by a *prima facie* showing of jurisdiction through affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *David Tunick, Inc. v. Kornfeld,* 813 F.Supp. 988, 990 (S.D.N.Y.1993); *Water Energizers, Ltd. v. Water Energizers, Inc.,* 788 F.Supp. 208, 210–11 (S.D.N.Y.1992). The allegations of the complaint, unless controverted by op-posing affidavits, must be taken as true, and all factual conflicts must be resolved in plaintiffs' favor for purposes of determining whether a *prima facie* case for personal jurisdiction has been met. *Water Energizers, Ltd. v. Water Energizers, Inc.,* 788 F.Supp. at 210–211.

■ Personal jurisdiction over a defendant in a diversity action is determined by reference to the forum state's relevant jurisdictional statutes, in this case, sections 301 and 302 of the New York Civil Practice Law and Rules. *See Beacon Enterprises, Inc. v. Menzies,* 715 F.2d at 762; *Water Energizers, Ltd. v. Water Energizers, Inc.,* 788 F.Supp. at 210. Plaintiffs have alleged that jurisdiction over the defendants exists under either section 301, as defendants are "doing business" in New York, or under section 302(a)(1), as the defendants are "transacting business" in New York. Without reaching the issue of whether defendants are "doing business" or are "transacting business" in New York, the Court finds that personal jurisdiction over the defendants exists.

Pursuant to the Second Circuit's decision in *Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714 (2d Cir.1974), the Court retains jurisdiction to enforce and consider challenges to the 1966 Settlement Agreement, which was entered into in this district. In *Meetings & Expositions,* defendant Tandy filed a Rule 12(b)(2) motion to dismiss with the district court, asserting lack of jurisdiction. *Id.* at 715. Before the motion was decided, however, the parties entered into a settlement agreement, which was then "So Ordered" by the district court judge. Thereafter, when the defendant allegedly defaulted on the agreement, plaintiff filed an order with the district court requiring defendant to show cause why it should not be punished for contempt. *Id.* at 716. In response, the district judge dismissed the action for lack of *in personam* jurisdiction, finding that the settlement agreement was a general appearance without waiver of the jurisdictional issue. *Id.*

On appeal, the Second Circuit reversed, holding that the "So Ordered" contract es-

tablished consent to the court's power over the parties.

> A stipulation and agreement of settlement, entitled in the action and "so ordered" by the judge, is quite different from a general appearance. Whether or not the court previously had personal jurisdiction over [the defendant], the stipulation was a consent to the exercise of the court's power to compel compliance. We thus do not need to rely on such additional circumstances as that the negotiation and signing of the settlement agreement in New York very likely would have subjected [the defendant] to suit in New York under the New York longarm statute, CPLR § 302(a)(2)....

*Id.* at 717; *see also Update Art, Inc. v. Charnin,* 110 F.R.D. 26, 35 n. 10 (S.D.N.Y. 1986) (where settlement stipulation was "So Ordered" by magistrate judge, defendant waived defense based on improper service of process); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.) ("Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic."), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

■ Pursuant to *Meetings & Expositions,* this Court has jurisdiction. The case at hand seeks enforcement of the 1966 Settlement Agreement, which was negotiated and executed in New York and "So Ordered" by this Court on May 25, 1966. In addition, all defendants here were signatories to the 1966 Settlement Agreement, namely: (1) Vidockler, on behalf of himself and plaintiff SAI; and (2) defendant Thomson, on behalf of himself, CAP, F. Hope, defendant Dennis H. Walter, D.C. Standen, defendant R. Marshall Gibson, John de La Haye, and defendant BCG. Plaintiffs now seek, *inter alia,* a finding that defendants are in contempt of this "So Ordered" Settlement Agreement. Under these circumstances, defendants, having previously submitted to the Court's jurisdiction for purposes of negotiating and executing the settlement agreement, have waived the defense of lack of jurisdiction. Accord-

ingly, defendants' motion to dismiss on this basis is denied.

## III. Plaintiffs' Motions

Plaintiffs have brought four motions: (1) pursuant to Fed.R.Civ.P. 19 and 25(c), for leave to file a Third Amended and Supplemental Complaint; (2) pursuant to Rule 15(a) and (d), for leave to add British Airways as a necessary and indispensable party; (3) for an order rescinding Judge Edelstein's December 16, 1991 Order prohibiting further discovery; and (4) for an order adjourning consideration of defendants' motion to dismiss and motion for summary judgment on the grounds that they are directed to the First Amended Complaint, and will become moot by the proposed Third Amended and Supplemental Complaint. As plaintiffs contend that defendants' motion to dismiss, on the basis of *forum non conveniens* and motion for summary judgment, may become moot by the motion to add British Airways as a party and amend the complaint, plaintiffs' motions will be addressed first.

### A. Law of the Case

■ According to the doctrine of "law of the case," a decision regarding an issue of law made at one stage of a litigation becomes binding precedent, to be followed in subsequent stages of the same litigation. *DiLaura v. Power Auth. of N.Y.,* 982 F.2d 73, 76 (2d Cir.1992); *Sanders v. Sullivan,* 900 F.2d 601, 605 (2d Cir.1990). The doctrine has its roots in the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit. *In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir.1991); *Childress v. Taylor,* 798 F.Supp. 981, 993–94 (S.D.N.Y.1992) (noting the "desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs") (quoting *Dictograph Prods. Co. v. Sonotone Corp.,* 230 F.2d 131, 135 (2d Cir.1956)). The law of the case is a discretionary rule of practice, however, and does not preclude a court from reconsidering its prior opinions, especially in light of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice." *DiLaura v. Power Auth. of N.Y.*, 982 F.2d at 76 (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)); *see also Polycast Technology Corp. v. Uniroyal, Inc.*, 792 F.Supp. 244, 264 (S.D.N.Y. 1992) ("[i]t is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge ... and may be modified to the same extent if the case is reassigned to another judge") (quoting *In re United States*, 733 F.2d 10, 13 (2d Cir.1984)).

■ The law of the case doctrine has two primary applications: (1) where decisions of a trial court have been ruled on through appeal; and (2) where decisions of a trial court have not been ruled on through appeal. *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir.1991). In the first situation, the trial court is barred from reconsidering or modifying a decision that has been ruled on by an appellate court. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. 792, 796 (S.D.N.Y.1990), *aff'd in part, rev'd in part*, 974 F.2d 270 (2d Cir.1992). "When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Uccio*, 940 F.2d at 757 (quoting *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977)). Where matters are not expressly or implicitly decided by the appellate court, however, the appellate court's decision does not establish the law of the case for those issues. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. at 796. Rather, the district court's decision remains the law of the case for those issues not reviewed on appeal.

> [I]n a circumstance "in which the mandate of the appellate court does not address a particular issue the appellate judgment, on this issue does not establish the law of the case, .... It remains, however, that the issue was decided by the district court in an earlier case and was not disapproved by the appellate court. It is, therefore, the law of the case, but within the more flexible branch of the doctrine applicable to successive ruling of the trial courts."

*Id.* (quoting 1B James Wm. Moore, *Moore's Federal Practice* ¶ 0.404[4.–3] (2d ed. 1988)); *see also In re PCH Assocs.*, 949 F.2d at 593.

■ The law of the case doctrine is also applied where a court is asked to reconsider its own prior rulings. Pursuant to this more "flexible branch" of the doctrine, the court may reconsider its prior rulings when those previous decisions were "substantially erroneous" or when "reconsideration is necessary to avoid injustice." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. at 796. Generally, however, the law of the case counsels against reconsideration absent "compelling circumstances," including an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice. *Id.* at 796–97; *see also United States v. Uccio*, 940 F.2d at 758 ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case ... absent 'cogent' or 'compelling' reasons.") (quoting *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)).

In *Scottish Air II*, the district court (1) denied plaintiff's motion to file a Second Amended Complaint and to add British Airways as a party; (2) granted summary judgment to defendants on plaintiffs' claim for contempt for allegedly violating Judge Bonsal's 1966 Order; and (3) granted—for the second time—defendants' motion to dismiss the remaining claims on grounds of *forum non conveniens*. See *Scottish Air II*, 751 F.Supp. at 1136. Thereafter, the Court of Appeals remanded on the grounds that the Court failed to give plaintiffs ten days notice of the Court's intention to consider granting summary judgement on the contempt claim, as provided by Fed.R.Civ.P. 56(c). *Scottish Air III*, 945 F.2d at 55. The Court of Appeals "decline[d] to address" the issue of *forum non conveniens* or whether British Airways was a necessary party. *Id.* Thus, with respect to those two issues—dismissal on the basis of *forum non conveniens* and denial of plaintiffs' motion to amend the complaint—the district court's determination in *Scottish Air II* remains the law of the case.

**26**

## B. Plaintiffs' Motion to Add British Airways as a Party

 At this time, plaintiffs are again attempting to add British Airways as a party and to file a further amended and supplemental complaint—relief denied them by *Scottish Air II*. Plaintiffs contend that (1) the Second Circuit, in *Scottish Air III*, set aside the district court's decision denying plaintiffs' motion to amend and to add BA as a party, *see* Memorandum of Points and Authorities in Support of Plaintiffs' Motion to File a Third Amended and Supplemental Complaint and Motion to Add British Airways, PLC, as a Defendant ("Pls. Mem."), at 3; and that (2) the district court's decision to deny the motion to add British Airways as a party was "based upon unsworn and incorrect information provided by defense counsel," *id.* at 2. As the plaintiffs' first contention is simply inaccurate, and the district court's decision to deny the motion to add British Airways remains the law of the case, this Court will reconsider the issue only in light of "compelling circumstances" such as an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. at 796–97; *United States v. Uccio*, 940 F.2d at 758.

 In support of their motion, plaintiffs argue that complete relief cannot be accorded to them without British Airway's presence, and that British Airways should therefore be joined as a necessary party pursuant to Rule 19(a). Specifically, plaintiffs claim that, following British Airway's tender offer for shares of BCG, BCG became an empty shell with no assets.

> As reflected in BCG's officially filed Reports and Accounts, BCG has no assets apart from unlisted shares of stock in subsidiaries and debts to BCG. Taking out British Airways' debt to BCG (£24 million), the unlisted shares of its subsidiary (£1.3 million), and amounts owed BCG by its subsidiaries (£2 million), leaves £19,000 debts by other debtors as BCG's only real asset. Thus, absent the support of British Airways, BCG is hopelessly insolvent with debts of approximately £5 million ...

Pls. Mem. at 5 (footnote omitted). In addition, plaintiffs maintain that the most recently available financial statement of BCG for 1990 shows that BCG had an operating loss, and that BCG's income from Caledonian Airways in that year of £1,560,000 was transmitted in its entirety to British Airways as a dividend, leaving BCG with a loss to transfer to its reserves. *Id.* Therefore, according to plaintiffs, any judgment awarding monetary relief to plaintiffs would be ineffective absent joinder of British Airways.

This is the same argument that was raised previously before Judge Edelstein and rejected as "unavailing for the simple reason that BCG has substantial assets with which to satisfy a money judgment awarded to plaintiffs." *Scottish Air II*, 751 F.Supp. at 1132. Specifically, the district court found that

> BCG's acquisition by BA has not created any impediment to plaintiff's ability to collect a judgment from BCG in the instant action. BCG continues to exist as a holding company and has substantial assets with which to satisfy a money judgment. BCG's principal asset is a wholly owned subsidiary, [Caledonian Airways], which conducts a profitable worldwide charter service. Accordingly, because complete relief between the parties can be accorded without joinder of BA, plaintiffs' motion to join BA as a necessary party pursuant to Rule 19(a) is denied.

*Id.* (footnote omitted).

Plaintiffs have not presented any new evidence or argument which indicates that *Scottish Air II* was "substantially erroneous." As the Court previously determined, BCG continues to be a holding rather than an operating company, possessing substantial assets and net worth. *See* Letter from Robert Zicklin to the Honorable David N. Edelstein of 1/19/89, at 1. BCG's principal asset is a wholly-owned subsidiary, Caledonian Airways, which conducts profitable worldwide charter airline operations. For example, by March 1991, Caledonian Airways had earned operating revenues equivalent to approximately £100,000,000, employed just under 500 persons and operated five Lockheed TriStars and three Boeing 757 aircraft. *See*

CAL Directors' Report and Accounts, dated March 31, 1991, annexed to the Affidavit of Robert Zicklin, sworn to on Feb. 24, 1992 (the "Zicklin Aff."), as Exh. "B." In addition, in 1991, Caledonian Airways retained and added to earned surplus its entire 1990–91 profit after tax of £6,753,000. *Id.*

Second, although plaintiffs attempt to write off debts owed to BCG of £2.4 million, these debts also constitute assets reachable by· plaintiffs. *See* BCG Report and Accounts 1990, annexed to the Affirmation of Robert Beckman, dated March 11, 1992, as Exh. "A;" *see also* N.Y.Civ.Prac.L. & R. § 5201 (McKinney 1978) ("A money judgment may be enforced against any debt, which is past due or which is yet to become due.").

And finally, British Airways, BCG's parent, has represented that it will ensure that any judgment that may be entered against BCG will be satisfied. *See* Letter from Gail Redwood to Robert Zicklin of 2/17/92 annexed to the Zicklin Aff. as Exh. "C." Therefore, as the Court found previously, BCG can satisfy any judgment which might be entered against it in this case. Accordingly, for the reasons set forth in *Scottish Air II*, plaintiffs' motion to add British Airways as a party is once again denied.

## C. Plaintiffs' Motion to Amend the Complaint

▮▮▮ Federal Rule of Civil Procedure 15(a) provides, in part, that once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Although Rule 15(a) provides that leave shall be freely given, the decision to grant or deny leave to amend lies within the Court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Sobel v. Yeshiva Univ.,* 477 F.Supp. 1161, 1168–69 (S.D.N.Y. 1979). In fact, the Supreme Court has stated that Rule 15(a) motions may be denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Clay v. Martin,* 509 F.2d 109, 113 (2d Cir.1975); *New York v. Cedar Park Concrete Corp.,* 741 F.Supp. 494, 496 (S.D.N.Y.1990).

▮▮▮ Federal Rule of Civil Procedure 15(d) provides that a party must get leave from the Court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. "Rule 15(d) permits a plaintiff to supplement the complaint in order to present subsequent material that is *related* to the claims presented in the original complaint." *Argus, Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 602 (S.D.N.Y.1982) (citing 3 James Wm. Moore, *Moore's Federal Practice* ¶ 15.16[1] (2d ed. 1982)) (emphasis added); *see also Albrecht v. Long Island R.R.,* 134 F.R.D. 40, 41 (E.D.N.Y.1991) ("A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings."). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *Music Deli & Groceries, Inc. v. I.R.S.,* 781 F.Supp. 992, 997 (S.D.N.Y.1991). However, absent prejudice to the defendants, leave to supplement the complaint should be liberally granted. *Id.*

Previously, plaintiffs sought leave to amend their First Amended Complaint in order to assert a claim against British Airways. Plaintiffs' proposed new claim was set forth in paragraph 22 of its proposed Second Amended Complaint. In paragraph 22, plaintiffs alleged that because BA failed to register its 1987 tender offer for BCG under the United States securities laws, plaintiffs were not given the option of exchanging their BCG shares for shares of BA, as were other BCG shareholders outside the United States. As a result, plaintiffs alleged that they were required to pay substantial taxes they otherwise could have postponed.

The district court, in denying plaintiffs' leave to amend, found that "BA's purchase of BCG's stock in 1987 has no relation to plain-

tiffs' claims against defendants in the first amended complaint in the instant action which allege that Vidockler was improperly removed from BCG's board of directors in 1985." *Scottish Air II,* 751 F.Supp. at 1134. The Court further found that

> Granting plaintiffs' motion to amend and supplement their complaint would involve joining BA as a party and would require separate and considerable discovery into the events of BA's purchase of BCG stock. Moreover, granting plaintiffs' motion would require adding legal issues wholly unrelated to plaintiffs' current claims. As to the legal issues supporting plaintiffs' proposed claim, plaintiffs fail to allege under what law BA was obligated to register its offering or under what law BA was required to offer plaintiffs' shares of BA in exchange for shares of BCG instead of cash. Further, plaintiffs provide no basis for their claim that they could have deferred payment of tax on the gain from the cash they received for their shares of BCG if they had been given the opportunity to receive shares of BA instead.

*Id.* Concluding that plaintiffs' motion to amend (1) would delay the instant action and occasion extended discovery; (2) appeared to be frivolous and subject to dismissal pursuant to a motion under Federal Rule of Civil Procedure 12(b)(6); and (3) appeared to be unrelated to plaintiffs' pending claims in the instant action, the district court denied plaintiffs' motion for leave to amend and supplement their first amended complaint. *Id.*

Plaintiffs now seek leave to amend their First Amended Complaint, pursuant to Fed. R.Civ.P. 15(a) and (d), on the ground that they have learned of facts supporting a claim for breach of a joint venture agreement, as well as facts which further support the claims for breach of agreements alleged in the First Amended Complaint. Specifically, plaintiffs now wish to add that in 1961, a joint venture was formed between two groups, one headed by Vidockler (SAI), the other by Thomson, chief executive and BCG shareholder (AIT). *See* Proposed Third Amended Complaint at ¶ 10. According to plaintiffs, the joint venturers, SAI and AIT, formed CAP to facilitate the creation of an air transportation

business, headquartered in England, which was designed to provide low cost transatlantic transportation. *Id.* The joint venturers agreed that SAI would (1) have a representative in senior management of the airline; and (2) hold directorships on the board of directors of both AIT and CAP. Disagreements concerning the joint venture's management led to the 1965 derivative action by SAI against CAP. *Id.* at ¶¶ 11 & 12. As a result, plaintiffs seek to amend the complaint to add a count seeking compensatory and punitive damages in light of the defendants' breach of their fiduciary duties as joint venturers and tortious misconduct. *Id.* at Counts IV & V.

Plaintiffs also seek leave to supplement their complaint, pursuant to Fed.R.Civ.P. 25(c), to add the following: (1) that in 1987, the defendants again breached the agreement that a representative of SAI would serve on the board of directors of BCG, *see* Proposed Third Amended Complaint at ¶ 23; (2) in April 1988, British Airways acquired all the outstanding shares of BCG, *id.* at ¶ 24; and (3) plaintiffs were denied certain "golden parachutes" which went to several BCG directors after the sale of BCG to BA, *id.* at ¶¶ 25 & 26.

In response, defendants argue that the Court should deny plaintiffs' motion to amend as (1) amendment at this stage of the proceedings would be needless and cause further delay in light of the fact that the case should be dismissed on the basis of *forum non conveniens* or lack of personal jurisdiction; (2) plaintiffs have effectively waived their right to file a Third Amended Complaint by failing to either seek reconsideration of, or appeal from, the Court's previous denial of a similar motion to amend, and (3) virtually all of what is set forth in the proffered Third Amended Complaint also appeared in the Second Amended Complaint which this Court previously denied.

### 1. Law of the Case

■ As an initial matter, defendants are correct in asserting that the Court already determined that plaintiffs could not supplement the complaint by adding claims involving British Airway's purchase of BCG stock,

as those claims are not related to the First Amended Complaint's contention that Vidockler was improperly removed from BCG's board of directors. *See Scottish Air II,* 751 F.Supp. at 1134. As the Court's previous ruling was not erroneous, *see Albrecht v. Long Island R.R.,* 134 F.R.D. at 41 (leave to supplement the complaint denied where the subsequent occurrence is unrelated to the matters alleged in the original complaint and would result in confusion and delay); *Nottingham v. Peoria,* 709 F.Supp. 542, 544 (M.D.Pa.1988) ("[A] court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if it all, to the original complaint and the alleged cause of action arose out [sic] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint."); 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1510 (2d ed. 1990), plaintiffs' renewed attempt to include allegations involving British Airways' purchase of BCG stock, namely, paragraphs 5, 6, 24, and 26, is denied as barred by the law of the case.

### 2. Undue Delay and Prejudice

While leave to amend is to be freely given when justice so requires, the grant of leave to amend rests in the sound discretion of the court. *See, e.g., Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72–73 (2d Cir.1990). Courts have properly denied leave to amend where "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Id.* at 72. In addition, the party who wishes to amend has the burden of providing satisfactory reasons for the delay. *Id.* (citing *Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 952 (S.D.N.Y.1983), *aff'd,* 730 F.2d 910 (2d Cir.1984)).

In this case, defendants maintain that plaintiffs have "ventured far beyond the pale" in seeking leave to allege that defendants violated their fiduciary duties as joint venturers under a 1961 joint venture, and that defendants acted maliciously with intent to harm plaintiffs and are thus accountable for punitive damages. Defendants note that, although plaintiffs give no indication of when they first learned of the alleged joint venture, clearly they should have asserted this claim when this suit was first instituted in 1985, or at the latest, when they moved for leave to file a Second Amended Complaint in 1990. In light of the fact that nearly thirty years have transpired since the alleged events giving rise to the joint venture claim, defendants argue that plaintiffs' motion to amend is inexcusably untimely, obviously dilatory and would severely prejudice defendants in securing the sound and prompt determination of the original claims pleaded seven years ago. The Court agrees.

In the instant matter, plaintiffs already had several opportunities to assert the proposed claims for breach of fiduciary duty and tortious misconduct by the time they requested leave to file a third amended complaint. The original Complaint was filed in January 1985. Thereafter, in March 1986, plaintiffs filed the First Amended Complaint. Later, in February 1989, they moved to file a Second Amended Complaint. In December 1990, defendants' motion to dismiss was granted. In January 1992, following remand by the Second Circuit, plaintiffs moved to file a Third Amended Complaint in which both the breach of fiduciary duty and tortious misconduct claims were asserted for the first time. Plaintiffs' motion comes seven years after bringing this suit, almost six years after filing their First Amended Complaint, nearly three years after seeking leave to file a Second Amended Complaint, and more than twelve months after the Court determined in *Scottish Air II* that this action should be dismissed. Although mere delay by itself does not provide grounds for denying leave to amend, plaintiffs have offered no reason for their delay. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d at 72; *Woolsey v. Marion Lab., Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991) (lack of explanation for delay in filing motion is one factor supporting a denial of leave to amend). Nor have they provided any explanation for failing to assert the proposed claims in the amendment previously allowed. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990) ("A busy district court

need not allow itself to be imposed upon by the presentation of theories seriatim.") (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967)); *Villa v. Chicago*, 924 F.2d 629, 632 (7th Cir.1991) ("leave is inappropriate where there is ... repeated failure to cure deficiencies by amendments previously allowed") (citing *Foman v. Davis*, 371 U.S. at 183, 83 S.Ct. at 230).

Furthermore, as defense counsel notes, no new evidence has now come to plaintiffs' attention since the filing of the original complaint which would justify such an untimely filing. In fact, as plaintiff Vidockler is alleged to be part of the joint venture, it is hardly credible that Vidockler was unaware until 1992 of the 1961 joint venture in which he was a principal. *Villa v. Chicago*, 924 F.2d at 632 (where no new facts or changes of law warranted the filing of an amended complaint, the district court's decision to deny leave to amend upheld).

In addition, plaintiffs' motion to amend follows the district court's determination that plaintiffs' action should be dismissed on the basis of both *forum non conveniens* and lack of a genuine issue of material fact. *See Scottish Air II*, 751 F.Supp. at 1134–36. Neither one of these determinations was reversed on the merits. *See Scottish Air III*, 945 F.2d at 55.

> [A] district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for the failure to present the new theory at an earlier time.

*Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1082 (8th Cir.1993) (quoting *Littlefield v. City of Afton*, 785 F.2d 596, 610 (8th Cir.1986)). To permit plaintiffs to plead its novel legal theory of fiduciary breach based upon a 1961 joint venture agreement and tortious misconduct would immeasurably enlarge the scope of this suit and severely prejudice defendants in securing the sound and prompt determination of claims already pending for seven years.

Accordingly, the Court finds that the delay in seeking leave to amend, for which plain-tiffs offered no explanation, was unreasonably long, apparently lacked a good faith basis and would cause the defendants prejudice. Under these circumstances, plaintiffs' motion seeking leave to amend their Complaint to add claims of breach of fiduciary duty and tortious misconduct, specifically, paragraphs 10, 11, 12, 32, 33, 34, 35, and 36, is denied.

### 3. Repetitive Pleadings

Finally, defendants contend that the verbiage which plaintiffs seek to add to their First Amended Complaint is unnecessary to provide full relief and only embellishes the picture. Plaintiffs' First Amended Complaint alleges that the individual defendants, together with BCG directors, entered into a secret conspiracy to deny SAI a claimed right to a representative on the BCG board; that they acted in furtherance of the conspiracy to cause Vidockler not to be reelected as a BCG director and force him off the Board; and that the defendants thereafter failed and refused to put plaintiff Vidockler or another SAI representative on the BCG board. Plaintiffs then pray for the award of all their damages as they shall prove at trial. According to defendants, this pleading is wholly adequate to enable plaintiffs to recover under any applicable theory of law their full measure of damages flowing from the alleged conspiracy. Thus, it is redundant to also plead that, in 1987, BCG refused to elect an SAI representative to the BCG board, Proposed Third Amended Complaint at ¶ 23, and that, because Vidockler was forced off the board of directors, plaintiffs were denied "golden parachutes" and other benefits resulting from the sale of BCG to British Airways, *id.* at ¶ 25.

Although Rule 15(a) of the Federal Rules of Civil Procedure mandates that a court freely allow amendments to a complaint, where the "additional allegations merely reiterate and embroider the claims ... already presented in [the] original complaint, adding little, if anything, of substance to [the] case," justice does not require that leave to amend be granted. *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir.1991); *see also O'Brien v. Price*

*Waterhouse,* 740 F.Supp. 276, 284 (S.D.N.Y. 1990) ("mere elaboration and increased verbiage concerning the same core allegations initially put forward" deemed insufficient to warrant amendment), *aff'd,* 936 F.2d 674 (2d Cir.1991). Given plaintiffs' tardiness in seeking this amendment, and the repetitive quality of their new allegations, plaintiffs' motion for leave to amend is denied in its entirety.

## IV. Defendants' Motion to Dismiss for Forum Non Conveniens

■■■■■ The Supreme Court has indicated that the court must be flexible in engaging in a *forum non conveniens* analysis, and that there are no determinative factors that dictate either granting or denying a motion to dismiss on this basis. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Specifically, in *Gulf Oil Corp.,* the Supreme Court set forth both the "private" and "public" factors that the court must weigh in conducting its *forum non conveniens* inquiry, including: (1) the remoteness of the forum from the situs of the event and the forum court's need to rely upon foreign law; (2) the availability of compulsory process to compel the attendance of unwilling witnesses; (3) the relative ease of access to sources of proof; (4) the possibility of viewing the premises, if need be; (5) the enforceability of a judgment if one is obtained; and (6) all other practical considerations that make trial of a case easy, expeditious, and inexpensive. *Id.* at 508–09, 67 S.Ct. at 843. Unless the balance weighs "strongly in favor" of the defendant, however, the plaintiff's choice of forum should rarely be disturbed. *Id.* at 508, 67 S.Ct. at 843. Moreover, this strong preference in favor of plaintiff's choice of forum is fortified when an American plaintiff brings suit against a foreign entity and the alternative forum is foreign. *David Tunick, Inc. v. Kornfeld,* 813 F.Supp. at 992 (citing *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972)). *But see Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.,* 712 F.2d 11, 14 (2d Cir. 1983) ("the plaintiff's forum choice should not be given automatic dispositive weight in determining a forum non conveniens motion").

In the case at hand, the district court twice dismissed on the basis of *forum non conveniens,* finding that (1) most of the documents so far requested are to be found in Great Britain; (2) except for Vidockler, all other potential witnesses who can testify as to the existence or nonexistence of various agreements are citizens and domiciliaries of Great Britain; (3) all the directors and officers of BCG, with one exception, are domiciled in Great Britain; (4) the majority of shareholders in BCG are British subjects; (5) almost every possible witness is beyond the jurisdiction of this Court; (6) the cost and disruption of obtaining the attendance of willing witnesses for discovery and trial would be considerable; (7) any damages awarded to plaintiffs would have to be remitted to legal proceedings in the British courts because none of the defendants have assets in New York upon which a money judgment could be obtained; (8) while New York has little interest in the instant action which involves the internal affairs of a Scottish corporation, Great Britain has a substantial interest in determining the legal rights to seats on the board of directors of a Scottish corporation; and (9) British law will be applicable to a number of issues.[3] Accordingly, the district court dismissed plaintiffs' claims for damages on the ground of *forum non conveniens,* subject to defendants' agreement to continue the instant action in Great Britain. *See Scottish Air II,* 751 F.Supp. at 1136.

Plaintiffs now argue that, in light of the Second Circuit's remand in *Scottish Air III,* 945 F.2d 53 (2d Cir.1991), the issue of dismissal on the basis of *forum non conveniens* should be reconsidered. Specifically, plaintiffs contend that the action should be maintained in New York as (1) both plaintiffs are citizens of New York and chose New York as their forum; (2) the defendants breached agreements which were negotiated in New York, executed, delivered and substantially performed in New York, and embodied in an order of a federal court in New York; and (3) the contempt claim can only be heard by the issuing court in the Southern District of New

---

**3.** Although the district court also found that any injunction seating Vidockler on BCG's board of directors, which sits in Great Britain, would not be enforceable, *see Scottish Air II,* 751 F.Supp. at 1135, plaintiffs contend that this assessment is moot in that BCG no longer ceases to exist.

York. Defendants respond that this Court is barred from reconsidering the issue on law of the case grounds, and that *Scottish Air II* should be reaffirmed.

As defendants' indicate, when the Second Circuit reversed the Court's summary judgment determination dismissing plaintiffs' contempt claim, it did not explicitly address the Court's dismissal on *forum non conveniens* grounds. In fact, the court explicitly remarked that

> Regardless of our views on the district court's application of the *forum non conveniens* factors or the court's determination that BA was not a necessary party, we decline to address these issues at this time in light of our remand.

*Scottish Air III*, 945 F.2d at 55. Rather, the court noted that the district court's decision to grant summary judgment *sua sponte*, might have prevented plaintiffs from making desired arguments against dismissal, and remanded for further proceedings. *Id.* Hence, as the Second Circuit did not rule on the dismissal for *forum non conveniens* grounds, that decision technically remains the law of the case which should only be set aside in case of "an intervening change of law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *DiLaura v. Power Auth. of N.Y.*, 982 F.2d at 76; *see also In re PCH Assocs.*, 949 F.2d at 593 (in cases in which the appellate court does not address a particular issue, the district court's decision remains the law of the case).

The Court notes, however, that even if the plaintiffs' claims for money damages are dismissed on the ground of *forum non conveniens*, a claim against defendants for contempt of the 1966 Settlement Agreement remains. That claim, alleging that defendants are in contempt of the 1966 Settlement Agreement, can only be heard by this Court. Thus, as the decision to grant or deny summary judgment with respect to the contempt claim—a claim which can only be heard by a court in the Southern District—has a bearing on whether to dismiss this action on the ground of *forum non conveniens*, the Court will stay its review of the *forum non conveniens* issue pending plaintiffs' submission of response papers opposing defendants' motion for summary judgment.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of personal jurisdiction is denied. Plaintiffs' motions to (1) file a Third Amended and Supplemental Complaint and add British Airways as party; and (2) adjourn consideration of defendants' motion for summary judgment are denied. Defendants' motion for reaffirmation of Judge Edelstein's December 4, 1990 Amended Opinion and Order dismissing this case on the ground of *forum non conveniens* is stayed pending resolution of the motion for summary judgment with respect to the contempt claim. As the Second Circuit remanded this case for the express purpose of giving plaintiffs an opportunity to respond to defendants' motion for summary judgment under Rule 56, and as the plaintiffs have not yet so responded, the plaintiffs will be given three weeks from the date of this Order to submit a response to defendants' motion for summary judgment. Defendants shall then have ten days from the date of plaintiffs' response to submit a reply. Discovery is stayed pending resolution of these motions.

SO ORDERED.